# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TRINYA ARNOLD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:13-cv-00197 |
| v. ) | Judge Nixon / Knowles |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 20. Plaintiff has filed a Reply to Defendant's Response. Docket No. 23.

For the reasons stated below, the undersigned recommends that this action be REMANDED.

## I.  INTRODUCTION

Plaintiff protectively filed her application for DIB on September 11, 2009.[1]  *See* Docket No. 10, Attachment ("TR"), pp. 85, 87.  Plaintiff alleged that she had been disabled since May 10, 2009.[2]  TR 213, 219.  Plaintiff initially alleged that she was disabled due to multiple sclerosis, chronic hypertension, a bulging disc causing joint pain in her back and extremities, optic neuritis, migraines, and dizziness.  TR 219.  In her appeal, however, Plaintiff added the diagnosis of fibromyalgia as a cause of disability, as well as complaints of pain, inability to sleep, irritability and panic.  TR 291.  Plaintiff's application was denied both initially (TR 85) and upon reconsideration (TR 87).  Plaintiff subsequently requested (TR 104-105) and received (TR 29-75) a hearing.  Plaintiff's hearing was conducted on November 30, 2011, by Administrative Law Judge ("ALJ") Shannon H. Smith.  *Id.*  Plaintiff and vocational expert ("VE"), Gordon Doss, appeared and testified.  *Id*.

On December 8, 2011, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 8-28.  Specifically, the ALJ made the following findings of fact:

---

[1]Plaintiff's actual application date was September 14, 2009.  TR 148.  The ALJ's decision also refers to an application for SSI that Plaintiff apparently protectively filed on October 20, 2009 (TR 11), but the record does not contain that application, although it does appear to contain the Disability Determination and Transmittals related to that application.  *See* TR 86, 88.  Since the parties's arguments do not depend on the missing SSI application, that application will not be addressed herein.

[2]Although the record contains a letter from Plaintiff's counsel to the ALJ dated November 10, 2011, in which counsel refers to "an onset date of September 1, 2009" (TR 308), Plaintiff has consistently referred to May 10, 2009, as her alleged onset date (*see* TR 213, 219; *see also* TR 297); this was the date that the ALJ relied upon in rendering her decision (*see* TR 11); and the record does not reflect that Plaintiff ever amended her application to claim September 1, 2009 as her alleged date of onset.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant engaged in substantial gainful activity after the alleged onset date. (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. However, there has been more than a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: Multiple Sclerosis (MS), optic neuritis, depressive disorder and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that claimant has the residual functional capacity to lift/carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours; stand/walk for 4 hours; would need to alternative [*sic*] every hour for approximately a 5 minute interval; never climb ladders/ropes/scaffolds; never work around unprotected heights or moving machinery; can occasionally balance, stoop, kneel, crouch or crawl; and can understand, remember and carry out simple, routine, tasks.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on May 29, 1971 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and

|     |     |
| --- | --- |
|     | 416.964). |
| 10. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 11. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)). |
| 12. | The claimant has not been under a disability, as defined in the Social Security Act, from May 10, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). |

TR 13-22.

On January 9, 2012, Plaintiff timely filed a request for review of the hearing decision. TR 141-147. On January 23, 2013, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

4

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the

> "listed" impairments[3] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the Medical-Vocational Guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is

---

[3] The Listing of Impairments is found at 20 CFR, Pt. 404, Subpt. P, App. 1.

typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) failing to consider Plaintiff's fibromyalgia, failing to find it to be a severe impairment, and failing to provide sufficient reasons for not finding it to be a severe impairment, specifically noting that her fibromyalgia is well-documented, meets the criteria set out by the American College of Rheumatology, and is a source of long-term limitations as illustrated by the restrictions opined by her treating physician, Dr. Shan-Ren Zhou; (2) failing to properly consider the opinion of Dr. Zhou, including rejecting his opinion without providing sufficient reasons for the rejection; (3) failing to properly evaluate and assess Plaintiff's credibility and her subjective complaints of pain; and (4) not adequately evaluating Plaintiff's obesity and the exacerbating effects of obesity on her other conditions. Docket No. 15. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Consideration of Plaintiff's Fibromyalgia**

Plaintiff argues that the ALJ failed to consider her fibromyalgia, failed to find it to be a severe impairment, and failed to provide sufficient reasons for not finding it to be a severe impairment. Docket No. 15, p. 15. Specifically, Plaintiff contends that "the ALJ failed to even consider or evaluate Plaintiff's fibromyalgia syndrome at all in her decision." *Id.* at 16. Plaintiff maintains that her fibromyalgia was "diagnosed and well-documented in the record, and "causes additional limitations which undoubtedly affect [her] ability to perform basic work activities, as well as the RFC assigned to her by the ALJ." *Id.* at 16. Plaintiff notes that her fibromyalgia causes impairments that "are more than a slight abnormality and have more than a minimal effect on [her] ability to function." *Id*.

Defendant responds that Plaintiff's allegations "that her fibromyalgia should have been considered a severe condition and the ALJ erred in ignoring it . . . must fail," because "the mere presence of it [fibromyalgia] does not preceded [*sic*] an entitlement to disability." Docket No.

21, p. 21. Defendant further responds that although the ALJ did not "specifically use the word 'fibromyalgia,'" the ALJ did consider Plaintiff's medical records that mention fibromyalgia, her subjective complaints of joint and full-body pain, and her treatment from several physicians. *Id.* at 22. Defendant contends that because the ALJ considered all of the evidence of record, none of which "posited long-term restrictions in the plaintiff's functional capacity in excess of those assessed by the ALJ," the ALJ properly "determined that her impairments were neither disabling in nature nor preclusive of her ability to perform a limited range of light work during the relevant period." *Id.* Defendant further contends that the evidence in the record supports the ALJ's findings regarding Plaintiff's health and ability to work. *Id.* at 23-24.

Plaintiff replies that because her fibromyalgia was well-documented and her treatment notes specifically indicate that "she has greater than 11 out of 18 tender points consistent with the American College of Rheumatology criteria for Fibromyalgia," the ALJ erred in not considering Plaintiff's fibromyalgia in her decision. Docket No. 23, p. 3. Plaintiff points to her medical records and continuous complaints of pain as support for her allegation that her fibromyalgia is a severe impairment. *Id.* As to Defendant's argument that no treating or examining source found long-term limitations from fibromyalgia, Plaintiff replies that Dr. Zhou, her treating physician, opined much greater restrictions stemming from Plaintiff's impairments than did the ALJ. *Id.* at 4.

The duty of the ALJ is to "fully and fairly develop the administrative record," and where the evidence suggests that a claimant may well meet a listed impairment, the ALJ must develop the evidence in order to determine whether or not the listing is met. *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986). In doing so, the ALJ must identify the

reasons and basis for crediting and rejecting certain items of evidence (*see, e.g. Morehead Marine Servs. v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998)), as there can be no meaningful judicial review without an adequate explanation of the factual and legal basis for the ALJ's decision. *Hyatt Corp. V. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991).

The ALJ's decision in the instant action does not fully develop the record as required. Plaintiff alleged that she was disabled due to fibromyalgia when she completed the disability report for her appeal. TR 291. Although the ALJ discussed Plaintiff's medical records and complaints of pain, the ALJ did not specifically discuss Plaintiff's fibromyalgia, and the ALJ's decision is unclear as to whether the ALJ considered these records and complaints as they relate to Plaintiff's fibromyalgia.

Both the Social Security Regulations and the Sixth Circuit have addressed the manner in which fibromyalgia should be considered by an ALJ. *See SSR 12-2p*, 2012 LEXIS 1; *Luukkonen v. Comm'r of Soc. Sec.*, 2016 U.S. App. LEXIS 11644 (6th Cir. 2016). SSR 12-2p makes clear that "[a]s with any adult claim for disability benefits, we use a 5-step sequential evaluation process to determine whether an adult with a[n] [medically determinable impairment] of [fibromyalgia] is disabled." 2012 SSR LEXIS 1 at *15. Explaining how the evaluation process should proceed, in the context of the evaluation of fibromyalgia, SSR 12-2p states:

> A. At step 1, we consider the person's work activity. If a person with FM[4] is doing substantial gainful activity, we find that he or she is not disabled.
>
> B. At step 2, we consider whether the person has a "severe" [medically determinable impairment](s). If we find that the person has an [*sic*] [medically determinable impairment] that could

---

[4]SSR 12-2p uses the abbreviation "FM" for fibromyalgia. *See* 2012 SSR LEXIS 1 at *1.

reasonably be expected to produce the pain or other symptoms the
person alleges, we will consider those symptom(s) in deciding
whether the person's impairment(s) is severe. If the person's pain
or other symptoms cause a limitation or restriction that has more
than a minimal effect on the ability to perform basic work
activities, we will find that the person has a severe impairment(s).

C. At step 3, we consider whether the person's impairment(s)
meets or medically equals the criteria of any of the listings in the
Listing of Impairments in appendix 1, subpart P of 20 CFR part
404 (appendix 1). FM cannot meet a listing in appendix 1 because
FM is not a listed impairment. At step 3, therefore, we determine
whether FM equals a listing (for example, listing 14.09D in the
listing for inflammatory arthritis), or whether it medically equals a
listing in combination with at least one other medically
determinable impairment.

D. Residual Functional Capacity (RFC) assessment: In our
regulations and SSR 96-8p, we explain that we assess a person's
RFC when the person's impairment(s) does not meet or equal a
listed impairment. We base our RFC assessment on all relevant
evidence in the case record. We consider the effects of all of the
person's medically determinable impairments, including
impairments that are "not severe." For a person with FM, we will
consider a longitudinal record whenever possible because the
symptoms of FM can wax and wane so that a person may have
"bad days and good days."

*Id.* at \*16-17 (footnote added).

In the instant action, the ALJ failed to specifically discuss Plaintiff's fibromyalgia. Thus, the undersigned cannot determine whether the ALJ properly engaged in the requisite evaluation, within the context of Plaintiff's allegations of disability due to fibromyalgia, and this action should be remanded for further consideration of Plaintiff's fibromyalgia.[5]

---

[5]Because the undersigned recommends that this action be remanded, the undersigned will not analyze Plaintiff's remaining statements of errors.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that this action be REMANDED for further consideration of the evidence in light of Plaintiff's fibromyalgia.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

 

_____
E. CLIFTON KNOWLES
United States Magistrate Judge